UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-2066(DSD/SER)

Sandusky Wellness Center LLC,
a Ohio limited liability company,
individually and as the
representative of a class of
similarly-situated persons,

       Plaintiff,

v.                                     **ORDER**

Medtox Scientific, Inc.,
Medtox Laboratories, Inc. and
John Does 1-10,

       Defendants.

      George Lang, Esq. and Anderson + Wanca, 3701 Algonquin
Road, Suite 760, Rolling Meadows, IL 60008; Brant D.
Penney and Reinhardt, Wendorf & Blanchfield, 332
Minnesota Street, Suite E-1250, St. Paul, MN 55101,
counsel for plaintiff.

      Jeffrey R. Mulder, Esq. and Bassford Remele, PA, 33 South
Sixth Street, Suite 3800, Minneapolis, MN 55402 and
Geoffrey W. Castello, Esq., Robert I. Steiner, Esq. and
Kelley, Drye & Warren LLP, 101 Park Avenue, New York, NY
10178, counsel for defendants.

      This matter is before the court upon the motion for class

certification by plaintiff Sandusky Wellness Center, LLC (Sandusky)

and the motion to dismiss by defendants Medtox Scientific, Inc. and

Medtox Laboratories, Inc. (collectively, Medtox).  Based on a

review of the file, record and proceedings herein, and for the

following reasons, the court denies the motion for class

certification and grants the motion to dismiss.

**BACKGROUND**

This putative class action under the Telephone Consumer Protection Act (TCPA) arises from an unsolicited facsimile advertisement sent to Sandusky by Medtox on February 21, 2012 (Exhibit A). See Am. Compl. ¶ 11; id. Ex. A. Sandusky is a chiropractic clinic owned by Gregg Winnestaffer and his wife. Winnestaffer Dep. 39:21-40:6. Medtox is a clinical and forensic toxicology laboratory that sells a lead screening product. Huffer Decl. ¶¶ 4-5. Because lead is especially harmful to children, Medtox markets its product to pediatricians, family practitioners, health departments and other organizations that work with children. Id. ¶ 6. Medtox uses health insurance provider directories to identify potential customers. Id. ¶ 7. In February 2012, Medtox compiled a contact list of pediatricians and family practitioners from a directory provided by CareSource Ohio. Id. ¶¶ 8-10. On February 21, 2012, Medtox sent Exhibit A, which promotes its lead testing product, to the providers on the contact list.[1] Id. ¶¶ 13, 16; Am. Compl. ¶ 11. One such provider was Dr. Bruce Montgomery, a family practitioner. Huffer Decl. ¶ 15; Montgomery Dep. 7:7-10. The fax did not have a cover sheet and did not identify Dr. Montgomery as the intended recipient. See Am. Compl. Ex. A. Sandusky was not named on the contact list. Huffer Decl. ¶ 14.

---

[1] The fax was successfully transmitted to 3,256 of the 4,210 fax numbers on the contact list. Huffer Decl. ¶¶ 12, 17, 19.

2

In 2012, Dr. Montgomery saw patients at Sandusky's offices one day a week.[2] Montgomery Dep. 21:24-22:10.  Dr. Montgomery provided Sandusky's fax number to CareSource for use in the directory.  Id. at 43:13-44:13; Huffer Decl. ¶ 15.  Winnestaffer reviews every fax received in Sandusky's office, even if it is addressed to someone else.  Winnestaffer Dep. 76:12-14, 78:8-80:10, 81:17-21, 127:5-11. Winnestaffer does not specifically recall receiving Exhibit A or what product was advertised in Exhibit A.  Id. at 74:16-75:12.

Winnestaffer mails all faxes unrelated to his practice to his lawyer in Cincinnati, who in turn sends them to Sandusky's counsel in this case, Anderson + Wanca.  Id. at 128:11-129:2.  As a result of this practice, Sandusky has served as a named plaintiff in nine TCPA class actions.  Steiner Decl. ¶ 4; see also Winnestaffer Dep. 41:12-42:10.  Through settlements in those cases, Winnestaffer has received $24,000 in incentive fees and Anderson + Wanca has collected millions of dollars in attorney's fees and expenses.  See Winnestaffer Dep. 57:2-11; see also, e.g., Sandusky Wellness Center, LLC v. Heel, Inc., Civ. No. 3:12-1470 (N.D. Ohio Apr. 25, 2014) (approving class settlement and awarding Anderson + Wanca $2 million in attorney's fees in order).

---

[2]   The parties dispute whether Dr. Montgomery was a Sandusky employee at the time Medtox sent the fax at issue, but that question is immaterial to the instant motions and need not be resolved.

Medtox also sent a nearly identical fax - save the telephone number contained in the text - to other recipients between February 18 and February 26, 2012 (Exhibit B).  Am. Compl. ¶ 11; id. Ex. B; see Huffer Decl. ¶¶ 21-24.  Sandusky does not allege that it received Exhibit B.  See Am. Comp. ¶ 11.  Neither Sandusky nor Dr. Montgomery was on the contact list for Exhibit B.  See Huffer Decl. ¶ 22.

On August 23, 2012, Sandusky filed a putative class action complaint, alleging a violation of the TCPA.  One day later, Sandusky filed a motion for class certification.  On October 15, 2012, Medtox moved to dismiss the class-action complaint, arguing that the case is not suitable for class treatment.  The court denied the motions, concluding that it was premature to determine whether the case could proceed on a class-wide basis.  ECF No. 25.

On May 8, 2013, Medtox made a Rule 68 offer of judgment to Sandusky in the amount of $3,500 - an amount higher than the applicable statutory damages.  Medtox then filed a second motion to dismiss, arguing that the case was moot because the offer extinguished Sandusky's personal stake in the litigation.  The court denied the motion because Medtox's offer of judgment failed to provide class-wide relief.  ECF No. 59, at 6.

The parties thereafter engaged in contentious class-certification discovery and extensive motion practice.  See ECF No. 142, at 2-6 (cataloging discovery motions).  On February 10, 2014,

4

Magistrate Judge Steven E. Rau recused himself from further involvement in the case, citing the "incredibly litigious nature of the case" despite its relative simplicity.  ECF No. 148, at 2. Sandusky filed its first amended complaint on May 21, 2014, and again moves for class certification.  Medtox moves to dismiss the complaint for lack of standing.

## DISCUSSION

## I.  Class Certification

Congress enacted the TCPA to restrict unsolicited fax advertisements "in order to prevent the cost shifting and interference such unwanted advertising places on the recipient." Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323 F.3d 649, 655 (8th Cir. 2003).  To that end, the TCPA prohibits any person from sending unsolicited fax advertisements.  See 47 U.S.C. § 227(b)(1)(C).  The TCPA requires that fax advertisements, even if solicited, contain an opt-out notice informing the recipient how to avoid such future faxes.  See id. § 227(b)(2)(D); 47 C.F.R. §§ 64.1200(a)(4)(iii)-(iv).  An individual may bring a private cause of action under the TCPA to recover $500 per violation or treble damages if the violation was willful and knowing.  47 U.S.C. § 227(b)(3).  It is undisputed that the faxes at issue were advertisements within the meaning of the TCPA and that they did not contain an opt-out notice.

**A.    Standard of Review**

"A district court has broad discretion in determining whether to certify a class[.]"  <u>Gilbert v. City of Little Rock, Ark.</u>, 722 F.2d 1390, 1399 (8th Cir. 1983) (citation omitted).  The plaintiff bears the burden to show that the class should be certified. <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994).  The court "must undertake a rigorous analysis to ensure that the requirements of Rule 23[] are met."  <u>Bennett v. Nucor Corp.</u>, 656 F.3d 802, 814 (8th Cir. 2011) (citation and internal quotation marks omitted).

Rule 23 of the Federal Rules of Civil Procedure sets forth a two-part analysis to determine whether class certification is appropriate.  Plaintiffs must first satisfy all four requirements of Rule 23(a), showing that: (1) joinder of all members is impractical because the class is too numerous, (2) there are questions of fact or law that are common to the class, (3) the claims or defenses raised by the representative parties are typical of those of the class, and (4) the representative parties will protect the interests of the class fairly and adequately. <u>Donaldson v. Pillsbury Co.</u>, 554 F.2d 825, 829 (8th Cir. 1977).  If all four elements are met, the court must then determine if at least one of the three subdivisions of Rule 23(b) is also met.  <u>Avritt v. Reliastar Life Ins. Co.</u>, 615 F.3d 1023, 1029 (8th Cir. 2010).

### B.   Class Definition

Before considering the explicit requirements set forth in Rule 23, however, the court must be satisfied that the proposed class is ascertainable. Brown v. Wells Fargo & Co., 284 F.R.D. 432, 444 (D. Minn. 2012); see also Powell v. Nat'l Football League, 711 F. Supp. 959, 966 (D. Minn. 1989) ("For implicit requirements of Rule 23(a), the Court must find ... the existence of a precisely defined class ...."). Specifically, the plaintiff "must establish that the class, as proposed, is objectively ascertainable and a precise definition of the class must be given." Gardner v. Equifax Info. Servs., LLC, No. 06-3102, 2007 WL 2261688, at *3 (D. Minn. Aug. 6, 2007). "[A] class definition should be based on objective criteria so that class members may be identified without individualized fact finding." In re OnStar Contract Litig., 278 F.R.D. 352, 373 (E.D. Mich. 2011); see also Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 537-38 (6th Cir. 2012) (holding that the class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class").

Sandusky moves to certify the following class under the TCPA:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages regarding lead testing services by or on behalf of Medtox, and (3) which did not display a proper opt out notice.

ECF No. 165, at 8.   Medtox argues that the class definition is imprecise, and the class not ascertainable, because it does not objectively establish who is included in the class.   The court agrees.

The proposed class definition centers on those people who "were sent" faxes from Medtox.   That terminology is problematic in this context because, as Sandusky acknowledges, the recipient of each fax is not readily apparent.[3]   See ECF No. 183, at 9 ("[W]hen a 'junk fax' is sent to a line owned by one person and a machine owned by another, both have an injury in fact and standing under the TCPA.").   Indeed, Medtox sent Exhibit A to Dr. Montgomery, but it was actually received by Sandusky, which owned and operated the fax machine.   Under the class definition, Dr. Montgomery or Sandusky - or both - may be class members.   Sandusky argues that the possibility of multiple recoveries for each fax should not preclude class certification because Congress contemplated that more than one person or entity may have standing to sue for each

_____

[3]   Sandusky does not define class members as "recipients" because it argues that a person need not receive a fax in order to have standing.   See 47 U.S.C. ¶ 227(b)(1)(C) (prohibiting the sending of unsolicited fax advertisements).   The court disagrees. A recipient is plainly contemplated under the TCPA, especially in a private action in which statutory damages must be awarded to someone.   Further, Sandusky's proposed language - persons who "were sent" faxes - is simply the passive equivalent of "recipient."   As such, the court does not draw a distinction between those terms for purposes of this motion.

violation.   Even if that characterization of congressional intent is correct, Sandusky's argument misses the point and, in fact, underscores the court's concerns.

In order to determine to whom each fax was sent - and thus, who was injured - the parties and the court would need to delve into the unique circumstances of each fax transmission.  The answer may come more readily in some instances – for example if the person to whom the fax was sent is the sole owner and user of the fax machine - but that information is not ascertainable absent an individualized inquiry.

Sandusky argues that the fax numbers used by Medtox will readily identify the class members.  But, as noted, the fax number is just the starting point of the analysis.  Once relevant fax numbers are identified, the parties will need to explore who owned, operated and used the fax machine associated with the fax number, just as they did with Sandusky.   It is neither feasible nor appropriate to undertake such an individualized inquiry as to each fax sent by Medtox.

Simply put, Sandusky's class definition is untenable because it would take individualized discovery to determine the threshold issue of who was "sent" each of the thousands of faxes at issue. See Brey Corp. v. LQ Mgmt., No. 11-718, 2014 WL 943445, at *1 (D. Md. Jan. 30, 2014) (declining to certify TCPA class because "the members of the putative class have standing to assert a claim

against defendant only if they received an unsolicited fax ... [and] [t]here are no objective criteria that establish that a putative class member in fact obtained an unsolicited fax"); Compressor Eng'g Corp. v. Mfrs. Fin. Corp., 292 F.R.D. 433, 450 (E.D. Mich. 2013)(finding nearly identical class definition impermissibly imprecise and amorphous); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) (rejecting TCPA class definition because "[d]etermining a membership in the class would essentially require a mini-hearing on the merits of each case"). Sandusky has offered alternative class definitions, none of which alleviates the court's concerns.  As a result, Sandusky's motion for class certification is denied.[4]

## II.  **Motion to Dismiss**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)

---

[4] Even if Sandusky could properly define the class, it cannot meet the commonality requirements of Rule 23(a)(3) and (b)(3), given the individual issues presented.  Further, the court has serious reservations about the adequacy of Sandusky as lead plaintiff and Anderson + Wanca as class counsel.  See Fed. R. Civ. P. 23(a)(4)(requiring plaintiff and counsel to "fairly and adequately represent the interests of the class").  Winnestaffer is unfamiliar and uninvolved in the case.  See Winnestaffer Dep. 45:23-25, 74:25-75:5, 130:15-131:18.  And Anderson + Wanca has engaged in litigious and dilatory conduct - including disregarding a court order in its favor - which gives the court pause as to counsel's commitment to the rights of potential class members. See, e.g., ECF Nos. 34, 44, 142, 148, 173.

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim
has facial plausibility when the plaintiff [has pleaded] factual
content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." Iqbal, 556
U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556
(2007)).  Although a complaint need not contain detailed factual
allegations, it must raise a right to relief above the speculative
level. Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a
formulaic recitation of the elements of a cause of action" are not
sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and
internal quotation marks omitted).

The court does not consider matters outside the pleadings
under Rule 12(b)(6).  Fed. R. Civ. P. 12(d).  The court may,
however, consider matters of public record and materials that are
"necessarily embraced by the pleadings." Porous Media Corp. v.
Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and
internal quotation marks omitted).  Here, the fax at issue was
attached to the complaint and is properly before the court.

Medtox argues that Sandusky does not have standing to raise a
claim relating to Exhibit B because Sandusky does not allege that
it was sent Exhibit B.  The court agrees.  After months of
discovery, Sandusky amended its complaint to allege that "[o]n
information and belief, Defendant also sent an unsolicited fax
advertisement within the class period which also lacked the

11

required opt out language." Am. Compl. ¶ 11. Sandusky does not allege that Medtox sent Exhibit B to Sandusky or that it actually received Exhibit B, despite making such allegations regarding Exhibit A. See id. ("On or about February 21, 2012 Defendants transmitted by telephone facsimile machine an unsolicited fax advertisement to Plaintiff."). The inability to specifically allege that Medtox sent Exhibit B to Sandusky, particularly after the benefit of extensive discovery, is telling and dispositive.

Based on the allegations in the complaint, the court concludes that Sandusky does not have standing to pursue a claim relating to Exhibit B. As a result, dismissal of the claim as it relates to Exhibit B is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED:**

1.   Plaintiff's motion to certify class [ECF No. 162] is denied; and

2.   Defendants' motion to dismiss [ECF No. 178] is granted in part as set forth above.

Dated:  August 5, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court

12