UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| SANDUSKY WELLNESS CENTER, LLC, an Ohio limited liability company, individually and as the representative of a class of similarly-situated persons, | Case No. 12-CV-2066 (PJS/HB) |
| Plaintiff, | ORDER |
| v. | |
| MEDTOX SCIENTIFIC, INC., MEDTOX LABORATORIES, INC., and JOHN DOES 1-10, | |
| Defendants. | |

---

Glenn L. Hara, Brian J. Wanca, Ryan M. Kelly, and Wallace C. Solberg, ANDERSON + WANCA; Garrett D. Blanchfield, Jr., and Brant D. Penney, REINHARDT WENDORF & BLANCHFIELD, for plaintiff.

Robert I. Steiner and Geoffrey W. Castello, III, KELLEY DRYE & WARREN LLP; Jeffrey R. Mulder and Lewis A. Remele, Jr., BASSFORD REMELE, P.A., for defendants.

Defendants MedTox Scientific, Inc. and MedTox Laboratories, Inc. (collectively, "MedTox") faxed an unsolicited advertisement to plaintiff Sandusky Wellness Center, LLC ("Sandusky"). In response, Sandusky filed this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Sandusky now moves to certify a class of 3,256 persons who received the fax, ECF No. 229, and MedTox moves to dismiss Sandusky's lawsuit for lack of standing, ECF No. 234. For the reasons

that follow, the Court grants Sandusky's motion to certify and denies MedTox's motion to dismiss.

I. BACKGROUND

Sandusky is a medical clinic in Ohio. Winnestaffer Dep. 10, 24 [ECF No. 205-2]. Its owner, Gregg Winnestaffer, is a chiropractor, but the clinic offers more than just chiropractic services. *Id.* at 20-21, 23-24, 35, 39-40. During the time period relevant to this litigation, Dr. Bruce Montgomery, a family practitioner, saw patients at Sandusky one day per week. Montgomery Dep. 7, 16-17, 21-22 [ECF No. 205-6].

MedTox is a toxicology laboratory in Minnesota. Huffer Decl. ¶ 4 [ECF No. 176]. MedTox provides a lead-testing service that it markets to pediatricians and other doctors who work with children. Huffer Dep. 13-16, 44 [ECF No. 205-4]; *see also* Montgomery Dep. 36 (describing the dangers that lead poses to children). MedTox's lead-testing service requires a doctor to draw only two drops of blood from a patient (instead of a whole ampule). *See* ECF No. 205-1; Montgomery Dep. 38-40. This makes MedTox's lead-testing service less invasive than many other forms of lead testing.

In February 2012, MedTox faxed a one-page advertisement to 3,256 healthcare providers touting its lead-testing service. Huffer Decl. ¶¶ 7-10, 16-17; *see also* ECF No. 205-1 (reproducing the fax advertisement). One of these faxes made its way to Sandusky. The fax was intended for Montgomery (the part-time family doctor), *see*

Huffer Decl. ¶¶ 7-10, 13-15, but the fax was not specifically addressed to Montgomery, *see* ECF No. 205-1, and Montgomery never actually saw the fax, *see* Montgomery Dep. 38. Instead, a Sandusky employee picked up the fax and brought it to Winnestaffer, who read it and mailed it to his attorney. Winnestaffer Dep. 76-81, 128. This lawsuit followed.

In this lawsuit, Sandusky claims that MedTox's unsolicited fax violated the TCPA because it was sent without "a proper opt-out notice" and without the recipients' "permission or invitation." Am. Compl. ¶¶ 14-17 [ECF No. 174]. Sandusky claims that MedTox's violation of the TCPA harmed it in at least four ways: First, MedTox's fax tied up Sandusky's fax line, preventing Sandusky from receiving other faxes or processing credit-card payments (which "run[] through the fax machine"). Winnestaffer Dep. 75-76, 81-83. Second, MedTox's fax wasted Sandusky's paper and ink. *Id.* at 74, 76, 83-84. Third, MedTox forced Sandusky's employees to waste time processing, reviewing, and disposing of the unwanted fax. *Id.* at 76-77, 84. And fourth, MedTox's fax "interrupted the Plaintiff's and other class members' privacy interests in being left alone." Am. Compl. ¶ 29; *see also id.* ¶ 3.

## II. PROCEDURAL HISTORY

Three years ago, Sandusky moved to certify a class of "persons who were sent advertisements by fax about products or services offered" by MedTox. ECF No. 162

at 1; *see also* ECF No. 165 at 8 (proposing a narrower class definition). Senior Judge David S. Doty denied Sandusky's motion for class certification on the grounds that the proposed class was not ascertainable. ECF No. 188 at 7-10. Judge Doty also questioned the commonality of the asserted claims and the adequacy of the proposed class representative and class counsel. *Id.* at 10 n.4.

On appeal, the United States Court of Appeals for the Eighth Circuit reversed the denial of class certification. *Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016). The Eighth Circuit held that the proposed class was ascertainable. *Id.* at 995-98. It also held that the proposed class met the commonality and predominance requirements for class certification. *Id.* at 998. It then remanded the case for further proceedings. *Id.*

On remand, the case was reassigned to the undersigned, ECF Nos. 223, 225, and Sandusky renewed its motion for class certification, ECF No. 229. MedTox responded by moving to dismiss the case for lack of standing. ECF No. 234.

### III. STANDING

*A. Standard of Review*

The requirement of standing is rooted in the fact that Article III of the United States Constitution limits the power of federal courts to "cases" or "controversies." U.S. Const. art. III, § 2. No "case" or "controversy" exists unless (1) the plaintiff has suffered

a "concrete and particularized" injury; (2) the plaintiff's injury "is fairly traceable" to the defendant's actions; and (3) the plaintiff's injury is "likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

A defendant's motion to dismiss a claim for lack of standing can be treated as either a "facial attack" or a "factual attack" on jurisdiction. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). When addressing a facial attack, a court must restrict itself to the face of the pleadings and accept all of the plaintiff's allegations as true. *Id.* When addressing a factual attack, a court may consider matters outside of the pleadings and weigh the evidence. *Id.* Here, the Court will construe MedTox's motion to dismiss as a factual attack on jurisdiction, and the Court will consider deposition testimony and other evidence in the record.

*B. Analysis*

MedTox argues that Sandusky lacks standing under the Supreme Court's recent decision in *Spokeo*. But *Spokeo* simply held that a "bare procedural violation" of a statutory right—"divorced from any concrete harm"—is not sufficient to establish Article III standing. *Spokeo*, 136 S. Ct. at 1549. Here, however, Sandusky alleges that MedTox's violation of the TCPA created several types of concrete harm. Specifically, Sandusky alleges that MedTox's illegal act disrupted Sandusky's business by tying up

-5-

its fax line, wasted Sandusky's paper and ink, and wasted the time of Sandusky's employees.[1]

Not surprisingly, the "vast majority" of post-*Spokeo* TCPA cases "have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury." *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16-CV-05486-JCS, 2017 WL 733123, at *6 (N.D. Cal. Feb. 24, 2017) (collecting cases). Indeed, most courts find that the receipt of even one unwanted call "is [generally] enough to clear Article III's low bar for a concrete injury." *Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d 1036, 1039 (D. Minn. 2016). Similarly, unwanted faxes harm the plaintiff by "occup[ying] his fax line and machine, us[ing] his toner and paper, and wast[ing] his time." *Brodsky v. HumanaDental Ins.*, No.

---

[1] Because Sandusky suffered a tangible injury, the Court need not decide whether the intangible injury that Sandusky allegedly suffered when its privacy was invaded by the unsolicited fax is sufficient to establish standing. *Compare Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2017) (concluding that the receipt of an unsolicited call or text from a telemarketer is enough to establish Article III standing as a nuisance and an invasion of privacy), *Potocnik v. Carlson*, No. 13-CV-2093, 2016 WL 3919950, at *3 (D. Minn. July 15, 2016) (noting that an invasion of privacy can establish Article III standing even if it would not be actionable "under the common law of any particular jurisdiction"), *and Brodsky v. HumanaDental Ins.*, No. 1:10-CV-03233, 2016 WL 5476233, at *11 (N.D. Ill. Sept. 29, 2016) (stating that "[a] claim under the TCPA for unwanted fax messages . . . is roughly analogous to a claim at common law for conversion"), *with Fauley v. Drug Depot, Inc.*, 204 F. Supp. 3d 1008, 1012 (N.D. Ill. 2016) (holding that the receipt of an unwanted fax by a business cannot establish Article III standing as an intangible injury because "businesses do not have privacy interests in seclusion or solitude").

1:10-CV-03233, 2016 WL 5476233, at *11 (N.D. Ill. Sept. 29, 2016); *see also Fauley v. Drug Depot, Inc.*, 204 F. Supp. 3d 1008, 1011 (N.D. Ill. 2016) (same).

The handful of TCPA cases that MedTox cites to the contrary can easily be distinguished. For example, in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016), the plaintiff "purchased at least thirty-five cell phones . . . for the [sole] purpose of filing lawsuits under the [TCPA]." *Id.* at 788. The plaintiff admitted that she did not use these cell phones for any purpose except to fish for telemarketing calls. The court concluded that the plaintiff did not suffer a concrete injury when she got exactly what she sought—telemarketing calls. *See id.* at 795-803. Here, by contrast, Sandusky did not purchase a fax machine for the sole purpose of drumming up TCPA litigation. Instead, Sandusky used its fax machine for many business purposes, such as to process credit-card payments and to send and receive prescriptions and other "pertinent information." Winnestaffer Dep. 75-76, 114-15.

Two of the cases on which MedTox relies were pleading cases, not standing cases. In *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 WL 3598297 (E.D. La. July 5, 2016), "the complaint's only reference to any kind of injury" was a single sentence stating that the "defendants' failure to comply with the TCPA's requirements 'caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the [Federal

-7-

Communications Commission].'" *Id.* at *3. Understandably, the court concluded that this vague and conclusory allegation was insufficient "to withstand dismissal at the pleading stage." *Id.* The court explicitly declined to decide whether a properly pled "allegation[] of lost time and opportunity cost would be sufficient to establish standing to assert a TCPA claim." *Id.* at *4. Similarly, in *Kostmayer Construction, LLC v. Port Pipe & Tube, Inc.*, No. 2:16-CV-01012, 2016 WL 6143075 (W.D. La. Oct. 19, 2016), the same attorneys who had inadequately pleaded standing in *Sartin* made the "same single reference to damages" in their complaint. Again, the court dismissed the plaintiff's complaint for inadequate pleading. *Id.* at *2-3.

In sharp contrast to the vague single-sentence allegations of harm in *Sartin* and *Kostmayer Construction*, Sandusky's amended complaint alleges that:

> Receiving the Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendants' faxes. Moreover, the Defendants' faxes used the Plaintiff's fax machine. The Defendants' faxes cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing and routing the Defendants' illegal faxes. That time otherwise would have been spent on the Plaintiff's business activities. The Defendants' faxes unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone.

ECF No. 174 ¶ 29. Obviously, Sandusky went far beyond merely alleging that it "sustain[ed] statutory damages . . . [and] actual damages." *Sartin*, 2016 WL 3598297, at *3; *Kostmayer*, 2016 WL 6143075 at *2.

The final case on which MedTox relies actually supports Sandusky, not MedTox. In *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, No. C 16-02113, 2016 WL 5870111 (N.D. Cal. Oct. 7, 2016), the court dismissed the plaintiff's complaint because the plaintiff failed to explain how it was injured by the defendant's addition of a "single line identifier on the optional cover sheet of a *solicited* four-page fax." *Id.* at *3 (emphasis added). But in its order, the court also said that *unsolicited* faxes "may generally" harm the recipient by wasting its paper, ink, and time, interrupting its privacy, tying up its fax line, and "caus[ing] undue wear and tear on [its] fax machine[]." *Id.* Here, Sandusky challenges MedTox's sending of an *unsolicited* fax, and Sandusky alleges precisely the types of harm that the *Supply Pro* court intimated would be sufficient to establish standing. *Compare id.*, *with* ECF No. 174 ¶¶ 11, 29.[2]

In short, Sandusky's allegation that MedTox's violation of the TCPA disrupted Sandusky's business by tying up its fax line, wasted Sandusky's paper and ink, and wasted the time of Sandusky's employees is sufficient to establish standing. The Court therefore denies MedTox's motion to dismiss.

---

[2] MedTox also cites *Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 WL 3683001 (E.D. Mo. July 12, 2016) and *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016), but these were both non-TCPA cases that analyzed whether the *intangible* injury experienced when personal data is lost or retained suffices to establish Article III standing. These cases said nothing about whether the *tangible* injury experienced by recipients when a fax is sent in violation of the TCPA suffices to establish standing.

## IV. CLASS CERTIFICATION

Sandusky moves to certify a class of "[a]ll persons who (1) between February 18, 2012, and February 26, 2012, (2) were sent one or more of the 3,256 transmissions of the telephone facsimile message attached as Exhibit A to the Complaint, which related to lead testing services by or on behalf of MedTox."[3] Because this proposed class meets the requirements of Rules 23(a) and 23(b)(3), the Court grants Sandusky's motion for class certification.

### A. Standard of Review

The plaintiff bears the "burden of showing that the class should be certified under Rule 23." *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 830 (8th Cir. 2016) . District judges have "broad discretion to decide whether" to certify a class. *Id.* (citation omitted). But district courts must exercise that discretion within the standards set by Rule 23, which requires a "rigorous analysis" to ensure that class certification is warranted. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

---

[3]MedTox proposed, and Sandusky agreed to, this definition of the class, although MedTox preserved its opposition to *any* class being certified. The Court expresses its appreciation to the parties for ironing out their differences regarding the definition of the class.

*B. Analysis*

For a class to be certified, it must meet all four[4] criteria of Rule 23(a) and fall within one of the three categories of Rule 23(b). In this case, Sandusky has moved for class certification under subsection (b)(3), which adds two requirements to Rule 23(a)'s four. The Court will address each of these six requirements in turn.

1. Rule 23(a)(1)—Numerosity

The first requirement for class certification under Rule 23(a) is that "the class is so numerous" that joining all of its members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Joining all 3,256 members of Sandusky's proposed class would clearly be impracticable. *See In re Wholesale Grocery Prod. Antitrust Litig.*, No. 09-MD-2090 ADM/TNL, 2016 WL 4697338, at *7 (D. Minn. Sept. 7, 2016) ("The Eighth Circuit has affirmed the certification of classes with as few as 20 members."). MedTox does not argue otherwise.

2. Rule 23(a)(2)—Commonality

The second requirement for class certification under Rule 23(a) is that "questions of law or fact" be "common to the class." Fed. R. Civ. P. 23(a)(2). The Eighth Circuit

---

[4]Some circuits have read a fifth requirement of "ascertainability" into Rule 23(a), requiring the members of the proposed class to be "readily identifiable." *See Sandusky*, 821 F.3d at 995-96 (citing cases from eight other circuits). The Eighth Circuit generally does not analyze "ascertainability as a separate, preliminary requirement," but in any event, the Eighth Circuit has already held that Sandusky's proposed class "is clearly ascertainable." *Id.* at 996-98.

has already held that Sandusky's proposed class meets this commonality requirement. *See Sandusky*, 821 F.3d at 998. MedTox is foreclosed from relitigating this issue on remand. *See Thompson v. Comm'r*, 821 F.3d 1008, 1011 (8th Cir. 2016) ("[W]hen a case has been decided by an appellate court and remanded for further proceedings, every question decided by the appellate court, whether expressly or by necessary implication, is finally settled and determined, and the court on remand is bound by . . . the mandate.").

### 3. Rule 23(a)(3)—Typicality

The third requirement for class certification under Rule 23(a) is that "the claims . . . of the representative parties"—here, Sandusky—be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). MedTox argues that Sandusky's claims are not typical of the claims of the class because "Sandusky is a professional TCPA plaintiff," and Sandusky "collects large incentive payments as a result [of] its involvement with such litigations." ECF No. 236 at 32.

The Court disagrees. Sandusky is not, in fact, a "professional plaintiff." Rather, Sandusky is a legitimate medical clinic, and Sandusky's owner (Winnestaffer) is a practicing chiropractor, not a full-time plaintiff. Morever, even if Sandusky were a "professional plaintiff" (whatever that means), Sandusky's claims would still be typical of the claims of the class. Sandusky received the same fax under the same

circumstances and is bringing the same claims under the same statute as the other members of the class. Sandusky's claims are clearly "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).

4. Rule 23(a)(4)—Adequacy

The fourth and final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that both the named class representative (Sandusky) and the proposed class counsel (Anderson + Wanca) must be willing and able to fairly and adequately represent the proposed class. *See Rattray v. Woodbury Cty.*, 614 F.3d 831, 835-37 (8th Cir. 2010).

*With respect to the proposed counsel:* Anderson + Wanca appears to be both competent and experienced. It specializes in TCPA litigation. *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 491 (7th Cir. 2013). It has vigorously litigated this case from the very beginning. And it has already defeated two motions to dismiss and prevailed on one appeal to the Eighth Circuit. *See* ECF Nos. 25, 59, 221-22.

MedTox makes much of the fact that Anderson + Wanca—acting on Sandusky's behalf—rejected an offer of judgment in 2013. *See* ECF No. 177-1 at 27-29; ECF No. 236 at 23-27. This offer of judgment would have capped MedTox's total liability at $247,500, inclusive of attorney's fees. *See* ECF No. 177-1 at 42-45. MedTox claims that this offer

was very generous to the putative class members and that, in rejecting this offer, Anderson + Wanca's put its own interests ahead of the interests of the class. ECF No. 236 at 23-27. For its part, Anderson + Wanca claims that MedTox's offer of judgment was insufficient "because it represent[ed] a recovery of between 5 and 15 cents on the dollar," and any attorney's fees should be based on "the amount *made claimable* to the class" rather than the "amount actually claimed by the class." ECF No. 239 at 12-13. The Court expresses no opinion on the merits of MedTox's offer of judgment, except to say that, in rejecting that offer, Anderson + Wanca did not demonstrate that it is incapable of fairly and adequately representing the class.

MedTox also points to two procedural mistakes that Anderson + Wanca made in the course of litigating this case. *See* ECF No. 236 at 28-29. First, Anderson + Wanca filed an amended complaint several months late. But this was an inadvertent mistake that Anderson + Wanca promptly corrected after the magistrate judge brought the mistake to its attention. *See* ECF Nos. 173, 174. Second, Anderson + Wanca initially filed a motion to strike instead of a timely opposition to MedTox's motion to dismiss. Judge Doty denied Anderson + Wanca's request for permission to file an untimely opposition to MedTox's motion to dismiss. Ultimately, however, Judge Doty denied MedTox's motion to dismiss, and thus Anderson + Wanca's error did not prejudice its client(s). *See* ECF No. 59. These procedural errors do not reflect well on

Anderson + Wanca, but they are not serious enough to call into question Anderson + Wanca's ability to fairly and adequately represent the proposed class.

*With respect to the proposed class representative:* The only issue that gives the Court pause is whether Sandusky will fairly and adequately protect the interests of the class. To date, Winnestaffer has shown little interest in or commitment to this litigation. Among other omissions, he failed to personally appear at the last settlement conference (he sent a nurse in his place rather than forego a day of vacation), and he appeared to be completely unprepared for his deposition—to the point that he could not even testify what the fax said. *See* Winnestaffer Dep. 74-75, 137-40. Given that Winnestaffer appears to have little interest in protecting his *own* interests, the Court is hesitant to find that he will protect the interests of the class.

That said, the main focus of the adequacy inquiry is "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Winnestaffer does not have any kind of a conflict with members of the class, and it is rare for a class representative who does not have a conflict to be disqualified on grounds of adequacy. Moreover, TCPA cases are not known for their legal or factual complexity, and thus there is generally not much for a class representative to do. *See Brown v. Rita's Water Ice Franchise Co.*, No. CV 15-3509, 2017 WL 1021025, at *8 (E.D. Pa. Mar. 16, 2017) ("TCPA litigation is neither challenging

nor complex."). And finally, the current lead attorney for the proposed class—who replaced the attorney who so poorly prepared Winnestaffer for his deposition—has assured the Court that Winnestaffer will be actively involved and well prepared going forward. *See* ECF No. 248 at 27 ("Your Honor, . . . if this case goes to trial and Dr. Winnestaffer is called to testify, I am going to prep him personally.").

Although the question is close, the Court finds that Sandusky "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Sandusky is on notice, however, that if Winnestaffer continues to show a lack of commitment to this litigation, the Court will not hesitate to revisit this finding.

### 5. Rule 23(b)(3)—Predominance

As noted, Sandusky has moved for class certification under Rule 23(b)(3). The first requirement for class certification under Rule 23(b)(3) is that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Eighth Circuit has already held that the proposed class action "meets the . . . predominance requirement[] of Rule 23." *See Sandusky*, 821 F.3d at 998.

### 6. Rule 23(b)(3)—Superiority

The second requirement for class certification under Rule 23(b)(3) is that a class action be "superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). This requirement is easily met in this case—as it is most TCPA cases—"because the main questions [in a TCPA case], such as whether a given fax is an advertisement" can usually be resolved in one stroke. *Sandusky*, 821 F.3d at 998 (citation omitted). Moreover, a plaintiff in a TCPA case can usually recover little in the way of damages. *See St. Louis Heart Ctr., Inc. v. Vein Ctrs. For Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (noting, among other things, that "the statutory damages available to each individual class member [in TCPA cases] are small—at most $1500 per violation," and the "court will only need to apply federal law, not multiple state laws"). Litigating the claims of this putative class in one federal action is far superior to forcing each of 3,256 putative class members to research the TCPA, figure out how to file a lawsuit in small-claims court, and then litigate a TCPA action to a conclusion.

Because Sandusky's proposed class action meets the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3), the Court grants Sandusky's renewed motion for class certification.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiff's renewed motion for class certification [ECF No. 229] is GRANTED, and the Court CERTIFIES a class of "[a]ll persons who (1) between February 18, 2012, and February 26, 2012, (2) were sent one or more of the 3,256 transmissions of the telephone facsimile message attached as Exhibit A to the Complaint, which related to lead testing services by or on behalf of MedTox."

2. Defendant's motion to dismiss [ECF No. 234] is DENIED.

Dated: April 25, 2017                           s/Patrick J. Schiltz
                                                                                    Patrick J. Schiltz
                                                                                    United States District Judge